UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **TERRY PHILLIPS**<br>    *Plaintiff,* | § § § | |
| vs. | § § § | CIVIL ACTION NO. |
| **SMITH COUNTY, TEXAS,**<br>**SHERIFF LARRY R. SMITH,**<br>    In his personal, supervisory and<br>    official capacity<br>**DEPUTY DENWORTH,**<br>    In his personal and official capacity<br>**DEPUTY STOCKWELL,**<br>    In her personal and official capacity<br>**DEPUTY RUGG,**<br>    In his personal and official capacity<br>**DEPUTY PETERS,**<br>    In her personal and official capacity<br><br>    *Defendants* | § § § § § § § § § § § § § § § | 6:25-cv-57 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff Terry (herein referred to as "Mr. Phillips"), by and through counsel CJ Grisham, brings this Complaint against Defendants Smith County, Texas (herein referred to as "County"); Sheriff Larry R. Smith (herein referred to as "Defendant Smith"), in his personal and official capacities, Deputy Denworth

(herein referred to as "Defendant Denworth"), in his personal and official capacities, and Deputy Stockwell (herein referred to as "Defendant Stockwell"), and in support thereof alleges the following upon information and belief:

## INTRODUCTION

1. On July 19, 2023, Defendants Stockwell and Denworth entered Plaintiff's home at 131 County Road 37, Tyler, Texas, without a warrant or exigent circumstances to justify their intrusion, searching for a phone belonging to his son, Lance A. Phillips, for which they also lacked a warrant.

2. This case is brought to enforce and protect fundamental constitutional rights of United States citizens, particularly in Smith County, Texas.

3. This action is a civil rights action under the First, Fourth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1985, challenging Defendants' actions and conduct that restricts Plaintiff's rights.

4. Defendants, jointly and separately, acted in a manner that suppresses the free expression of speech by targeting Plaintiff for his public efforts at exposing corruption and abuses of authority under color of law.

5. Defendant County has a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that targets the Smith Family's rights, freedoms, privileges and

immunities which "inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978).

6. Plaintiff is an engaged and informed citizen who served as a public official in Smith County.

7. Plaintiff has a right to be free from illegal searches and seizures.

8. Defendants conspired to violate Plaintiff's rights through retaliation, abuse of authority under color of law, and official oppression.

## JURISDICTION AND VENUE

9. This action arises under the Constitution and laws of the United States of America.

10. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Plaintiff's claims for damages are authorized by 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Smith County, Texas.

## PLAINTIFF

13. Plaintiff, Mr. Phillips, is a citizen of Smith County, Texas.

14. Mr. Phillips has a substantial interest in being free of harassment, retaliation, official oppression, violation of his civil rights, and abuse of authority under color of law.

15. Plaintiff, Mrs. Phillips, is a citizen of Smith County, Texas.

16. Mrs. Phillips is the elected Smith County Clerk.

17. Mrs. Phillips has a substantial interest in being free of harassment, retaliation, official oppression, violation of his civil rights, and abuse of authority under color of law.

## DEFENDANTS

18. Defendants, collectively, are government officials and entities.

19. Defendants operate in their official and personal capacities in Smith County, Texas.

20. Defendant County is a political subdivision organized under the authority of the Texas Constitution, Article IX, Section 1.

21. Defendant Smith is the Smith County Sheriff, and is being sued in his personal, supervisory, and official capacities.

22. Defendant Denworth is a Smith County Deputy, employed by the Smith County Sheriffs Office, and is being sued in his personal and official capacities.

23. Defendant Stockwell is a Smith County Deputy, employed by the Smith County Sheriffs Office, and is being sued in his personal and official capacities.

24. Defendants, as government officials and entities, are bound to the United States Constitution.

25. At all times relevant herein, Defendants acted in their personal and official capacities within Smith County, Texas.

26. Defendants, as government officials and entities, are not permitted to engage in actions that violate the United States Constitution.

## STATEMENT OF FACTS

### I.     Warrantless Search – July 2023

27. On July 29, 2023, at approximately 2:11 p.m., Defendant Denworth appeared at Plaintiff's home and identified himself as "Deputy Denworth, with the Sheriff's Office."

28. Defendant Denworth stated that he was there to "get Lance's phone."

29. Mrs. Phillips replied that "Lance didn't bring his phone here" on at least two occasions as recorded by her Ring doorbell camera.

30. While talking on the front porch of the home, Defendant Stockwell arrived.

31. Defendants Stockwell and Denworth stated that they needed to go into the Plaintiff's home to get Lance's phone.

32. Defendants Stockwell and Denworth asked if there was anyone else in house, at which time Mr. Phillips came to the door.

33. Defendants Stockwell and Denworth asked Mr. Phillips some questions that Mr. Phillips had no desire to answer and began to return back into his home.

34. Defendant Denworth told Mr. Phillips that "I'm gonna have you stay outside for me, OK?"

35. Mr. Phillips responded that he was not going to stay outside because it was his property and he was not accused of a crime.  Therefore, there was no authority to detain or arrest Mr. Phillips.

36. Mr. Phillips reiterated that he didn't have his son's phone either.

37. Mr. Phillips made very clear to Defendants Denworth and Stockwell that they were "not going inside our house without a warrant."

38. Defendant Denworth intentionally and deliberately prevented Mr. Phillips from returning to his home or leaving the porch.

39. Defendant Denworth did not have Mr. Phillips consent to hold him there on the front porch.

40. Defendant Denworth did not have a warrant and was without legal justification or authority to hold Mr. Phillips on his front porch and prevent Mr. Phillips from leaving.

41. Deputy Stockwell then stepped away to make a phone call and, when he returned, told Plaintiff that "they are typing up a warrant and it will need to go over to the judge to sign and then someone will drive it out here."

42. Mr. Phillips explained he would wait on the warrant to arrive but that no one was allowed in his home.

43. Mr. Phillips attempted to go back into the home, but Defendant Denworth ordered Mr. Phillips to stay on the front porch.

44. Defendants Denworth and Stockwell asked several times if there was someone else inside the house, to which the Plaintiff responded that there was not. Lance Phillips had already turned himself in prior to this encounter.

45. Mr. and Mrs. Phillips explained several times to Defendants Stockwell and Denworth that "there was no one inside our house" and Defendants insisted they had to go in and check.

46. Plaintiff stated numerous times that Defendants were not allowed inside their home without a warrant.

47. Defendant Stockwell then said that he "can go check and then write us a warrant tomorrow and have it for us."

48. Mr. Phillips again said he was not to go in the home without a warrant.

49. Defendant Stockwell insisted that he go into the Plaintiff's home to search for "a person" and forced himself into Mr. and Mrs. Phillips' home.

50. Defendants Stockwell and Denworth began searching the home in places where "a person" could not even fit, such as under beds with a three-inch clearance between the floor and box spring.

51. Finding no people or phones during their unconstitutional search, Defendants Denworth and Stockwell left the home after approximately ten minutes of searching.

## II.     Warrantless Search – March 2023

52. On March 28, 2023, Defendant Peters followed Cody Voss onto the Plaintiff's property for an alleged traffic stop.

53. Approximately five minutes later, Defendant Rugg arrived on the scene on Plaintiff's property.

54. Defendant Rugg orders Derek Phillips, Plaintiff's son, to "get over here" despite not being the subject of the stop.

55. Derek tells Defendant Rugg to "get off my property."

56. Defendant Rugg accuses Derek of "checking yourself into this traffic stop" despite the fact that they are on Derek's property.

57. Defendant Rugg again orders Derek to "get over here now," which Derek refuses because he has no duty to follow illegal or unconstitutional orders when he is not suspected of a crime.

58. There is no crime in the state of Texas called "checking oneself into a traffic stop." Derek did not interfere with the traffic stop in any way and only spoke to Cody while Defendant Peters was rummaging through Cody's wallet.

59. When Derek refuses to "get over here," Defendant Rugg aggressively begins walking towards Derek, who retreats into the home.

60. As Derek walks into his home, Defendant Rugg orders Derek "don't go in that house!" and begins running after Derek, who is in fear of his life.

61. When Defendant Rugg begins running, Defendant Peters joins him and runs into the home without a warrant, probable cause, or exigent circumstances.

62. The entire incident is caught on both a Ring security camera, Derek Phillips', and Mrs. Phillips' cell phone camera.

63. Approximately ten minutes into the ordeal, Mr. Phillips arrives at his home.

64. Defendant Rugg orders Mr. Phillips in an aggressive and loud voice to "STAY! BACK!"

65. Mr. Phillips explains that "this is my house!"

66. Defendant Peter explains to Mr. Phillips that while he was dealing with Cody, "Derek stepped out and started interjecting into the traffic stop, yelling, preventing me from continuing my stop with Cody."

67. The video clearly shows that this did not happen, and it is not a crime to speak during a traffic stop even if it did.

68. Defendant Peter explained to Mr. Phillips that when Defendant Rugg showed up, "we attempted to detain Derek, due to interfering with public services."

69. Defendants Rugg and Peters knew or should have known that speech alone does not constitute an offense of "interference."

70. Defendant Peters then lied to Mr. Phillips that Derek "ran into the house; we HAD to follow him into the house."

71. At no time did Defendant Rugg or Peters tell Derek that he was being detained, under arrest, or suspected of a crime.

72. At not time did Derek Phillips run into the house.

73. Defendants Rugg and Peters then conspired to create an offense of "interference" to justify violating the 4th Amendment rights of Plaintiff by entering their home without a warrant, probable cause, or exigent circumstances.

74. Defendants Rugg and Peters conspired to create a story for their supervisor, Sergeant Blair, who arrived on the scene after the foregoing had transpired.

75. Defendants Rugg and Peters lied to Sergeant Blair about Derek running into the house, which is confirmed on video as not happening.

76. Defendants Rugg and Peters lied to Sergeant Blair that they attempted to detain Derek, and he ran, which is why they were forced to enter the home.

77. Defendants Rugg and Peters lied to Sergeant Blair that Cody Voss stated he lived at the home.

78. Defendants Rugg and Peters lied to Sergeant Blair that "all I got was this" referring to a passport despite having and searching Cody's wallet which contained his driver license.

79. Defendants Rugg and Peters lied to Sergeant Blair that Derek "prevented me from getting this guy's [Cody's] ID."

80. Defendant Rugg lied to Sergeant Blair that when Defendant Rugg told Derek to come and talk to him, Derek responded "No, fuck you." and "Go fuck yourself." Video clearly shows this never happened.

81. Defendant Rugg admitted that Derek wasn't violating any laws when he told Defendant Peters that "it's one thing to be standing there filming, but not saying 'fuck you" knowing that these statements were not only false, but did

not constitute a criminal offense in Texas. In fact, said statements are specifically protected under the First Amendment even if they were made.

82. Defendant Peters and Rugg conspired to invent charges against both Cody and Derek to justify their intrusion of Plaintiff's home, to include discussion of concocting "felony assault on a peace officer" charges because Defendant Rugg complained of a hurt elbow.

83. Defendants Peters and Rugg conspired to take pictures of Defendant Rugg's elbow as "evidence" of an assault by Derek Phillips.

84. Defendants Peters and Rugg conspired to label Derek and Cody as "sovereign citizens" to justify their intrusion into Plaintiff's home.

85. As a result of Defendants Peters' and Rugg's actions, Mrs. Phillips had a "full-scale panic attack" according to EMS, and needed medical attention.

### III.   Ongoing Targeting of Smith Family

86. The Phillips Family have a reputation for holding government accountable to the People by exposing corruption, mismanagement of funds, and violations of rights.

87. Defendant County has engaged all of its resources to do everything possible to take down the only elected officials – Plaintiff in this case – who dare to stand up to the politically powerful in Smith County.

88. Defendant County uses the County Judge, Sheriff, County and District Attorneys offices, and local media to engage in retaliatory arrests, steer public opinion against Plaintiff, and bully the Phillips family using its police power.

89. Mr. Phillips was historically re-elected to office unopposed.

90. After the sustained actions of Defendants that led to negative media attention, high profile criminal allegations against every member of the Phillips family, and the weaponization of the justice system in Smith County, Mr. Phillips saw a primary challenger for the first time since winning office and lost his seat.

## SECOND CLAIM FOR RELIEF
### (Conspiracy to Interfere with Civil Rights - 42 U.S.C. 1985)

91. Plaintiff hereby incorporates by reference all stated paragraphs.

92. Defendants' Denworth, Stockwell, Rugg, Peters, and Smith conspired on Plaintiff's premises to deprive Plaintiff of the equal protection of the laws, equal privileges and immunities under the law.

93. Defendants' Denworth, Stockwell, Rugg, Peters, and Smith conspired on Plaintiff's premises to deprive Plaintiff of his Fourth Amendment right as citizens of the United States to be secure in his home against unreasonable searches and seizures.

94. Defendants' Denworth, Stockwell, Rugg, Peters, and Smith conspired on Plaintiff's premises to deprive Plaintiff of his Fourteenth Amendment to equal protection under the laws.

95. As a direct and proximate result of Defendants' violation of the Fourth Amendment and 18 42 U.S.C. § 1985, Plaintiff has suffered irreparable harming, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief.

96. Plaintiff is entitled to the recovery of damages occasioned by these injuries and deprivations against one or more of the conspirators.

## THIRD CLAIM FOR RELIEF
### (Retaliation, 42 U.S.C. 1983)

97. Plaintiff hereby incorporates by reference all stated paragraphs.

98. Plaintiff is a prominent member of the Smith County community who served at the time as a County Commissioner.

99. Plaintiff frequently stands on the opposite side of political issues and demands accountability of public officials who violate the rights of citizens or waste money and resources of taxpayers.

100. Because of his political positions, Plaintiff and his family are frequently targeted by the Smith County Sheriff's Office and County Officials.

101.    Defendants treat Plaintiff and his family members as second-class citizens not entitled to equal protection of the law in Smith County by virtue of their activism, honor, integrity, and personal courage in standing up for the rights of citizens.

102.    In response to Plaintiff's protected conduct, Defendants engaged in retaliatory actions by filing a never-ending stream of criminal allegations, violations of civil rights, and public statements against the Phillips family designed to turn public support against Plaintiff.

103.    As a direct and proximate cause of Defendants' retaliatory actions, Plaintiff suffered irreparable harm, including the loss of his Constitutional rights, entitling him to the recovery of damages.

### THIRD CLAIM FOR RELIEF
### (False Imprisonment, 42 U.S.C. 1983)

104.    Plaintiff hereby incorporates by reference all stated paragraphs.

105.    Defendants Denworth and Stockwell falsely imprisoned Mr. Phillips by intentionally and deliberately restricting his movements without consent, legal justification, or authority.

106.    Mr. Phillips was not accused of any criminal activities and Defendants did not have a warrant to enter the home or restrain his movement.

107.    As a direct and proximate cause of Defendants' actions, Mr. Phillips' rights were violated and he suffered damages to his liberty, property rights, and freedom of movement.

## MONELL LIABILITY

108.    Defendants' actions, and the actions of the County, demonstrate a policy, practice, or custom to retaliate against Plaintiff for engaging in his protected activities.  Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprived Plaintiff of his right to be free from retaliation for protected conduct.

109.    At all relevant times, Plaintiff had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to be free of unlawful searches and seizures.

110.    Defendant County was aware of Defendants' Denworth, Stockwell, Rugg, Peters, and Smith retaliatory conduct and did nothing to prevent it.  In fact, Defendant County encouraged and added to it.  Defendant County showed a deliberate indifference for the constitutional rights of Plaintiff.

111.    Defendant County showed a deliberate indifference and ratified Defendants' Denworth, Stockwell, Rugg, Peters, and Smith conduct.

112. As a direct and proximate result of Defendant County's unlawful actions, Plaintiff was harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A) A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that allow for warrantless searches, criminal trespass warnings to be issued, and threats of arrest for protected speech, are in retaliation for exercising their Constitutional rights, violate the First, Fourth, and Fourteenth Amendments to the United States Constitution;

B) Injunctive relief barring Defendants' conduct and from maintaining their policies, practices, and custom of allowing and encouraging warrantless searches, and threats of arrest for protected speech, in retaliation for exercising Constitutional rights, which is in violation of 42 U.S.C. § 1983 and § 1985;

C) Nominal Damages for retaliation by Defendants for Plaintiff's exercise of his First Amendment rights of free expression and petitioning for the redress of grievances, as the Court finds appropriate, from one or more Defendants;

D) Punitive Damages from one or more Defendants in the amount of $500,000;

E) Pre-judgment and post-judgment interest from one or more Defendants;

F) Reasonable attorney's fees and costs of this action; and

G) Any such other relief as appears just and proper.

Respectfully submitted,

LAW OFFICES OF CJ GRISHAM, PLLC

CJ Grisham
Texas State Bar no. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
P: 254-405-1726

*Attorney for Plaintiff*